U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[Signature: Barbara J. Houser]*

**United States Bankruptcy Judge**

Signed September 02, 2010

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JOHN ROBERT JOHNSON, JR., | § | CASE NO. 05-38147-BJH-13 |
| | § | |
| DEBTOR. | § | CHAPTER 13 |

### MEMORANDUM OPINION AND ORDER

Before the Court is the United States Trustee's ("U.S. Trustee") motion to convert John Robert Johnson, Jr.'s ("Johnson") recently-reopened bankruptcy case from chapter 13[1] to chapter 7, and to appoint a trustee to administer the estate (the "Motion"). The Court has core jurisdiction over the parties and the issues raised in the Motion under 28 U.S.C. §§ 1334 and 157.

---

[1] All references to "chapter 7" and "chapter 13" are to chapters 7 and 13 of the Bankruptcy Code. 11 U.S.C. §§ 701-784, 1301-1330.

**Memorandum Opinion and Order**

The Motion was heard on August 19, 2010. Johnson testified at the hearing. This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

In 2005, Johnson filed a voluntary petition in this Court under chapter 13 of the Bankruptcy Code, thereby commencing the above-referenced case (the "Case). Ten months into the Case, Johnson filed a chapter 13 plan. After making two only plan payments, Johnson defaulted and the Case was dismissed without prejudice.

Nearly four years later, the U.S. Trustee's Office received word that Johnson was about to receive roughly $40,000 as his share of a class action settlement against the drug-maker Merck. Merck produced Vioxx, an anti-inflammatory drug that was pulled from the domestic market in 2004, and which Johnson alleged contributed to his father's 2002 death. Johnson's lawyer, having noticed the Case, asked for the U.S. Trustee's permission to distribute the settlement money to Johnson. The U.S. Trustee investigated and learned that Johnson had hired the Vioxx lawyer in March 2006 to bring all potential personal injury and wrongful death claims related to his father's Vioxx use. Alhough Johnson was in bankruptcy at the time he hired this lawyer, he never disclosed the Vioxx claim on his bankruptcy schedules. The U.S. Trustee thus moved the Court to reopen the Case so that the estate could benefit from the settlement funds.

The U.S. Trustee uploaded its motion to reopen and a proposed order granting the motion to the Court's electronic docket on June 15, 2010. The next day, the Trustee sent Johnson notice of the motion. Shortly after receiving notice Johnson hired a lawyer. But, due to an arguable procedural oversight, the Court signed the Order granting the motion to reopen on June 18, 2010.

And, because the Order was entered so quickly, a hearing on the motion to reopen did not take place.

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure expressly require notice of a case reopening. *See In re Miller*, 347 B.R. 48, 56 (Bankr. S.D. Tex. 2006); 9 Collier on Bankruptcy ¶5010.02[5], p. 5010-6 (15th ed. rev. 2004). In fact, the Fifth Circuit has held that debtors may lack standing to object to reopening a case where, as here, the purpose of reopening is to administer a new asset. *See Williams v. Rice*, 30 F.2d 814, 815 (5th Cir. 1929); *see also In re Hopkins*, 11 F.Supp. 831, 832 (W.D.N.Y. 1934) ("Neither the bankrupt nor adverse claimants should be permitted to oppose an application of a creditor to reopen the case."). Nonetheless, given Johnson's objections to both the reopening of the Case and its conversion to chapter 7 as articulated in his "Answer to Motion to Convert Case to Chapter 7" (the "Johnson Answer"), the Court will treat the Johnson Answer as a motion to reconsider the Order reopening the Case as well as a response in opposition to the Motion.[1]

## II. THE PARTIES' CONTENTIONS

The U.S. Trustee argues that the Case was properly reopened and that there is cause to convert the Case to chapter 7 because Johnson has no intention of prosecuting the Case as a chapter 13 case and there are assets available for distribution to creditors. Accordingly, the U.S. Trustee argues that the Case should be converted to chapter 7 and a trustee should be appointed

---

[1] This solution makes sense because Johnson argues both issues together. For example, he claims that "the act[] of *reopening a case…and forcing conversion* must be based on conscious wrongdoing rising to bad faith." (Johnson Ans. ¶ 17) (emphasis added). Elsewhere he argues that the four-year gap between when the Case was closed and when the U.S. Trustee moved to reopen "militates against *both the reopening of [the] case and its involuntary conversion*." (Johnson Ans. ¶ 18) (emphasis added). And, he concludes that "if *reopening and converting* a case after so much time and without proof of bad faith becomes the law, then [c]hapter 13 loses an essential part of its appeal—its voluntary nature." (Johnson Ans. ¶ 22) (emphasis added).

**Memorandum Opinion and Order** 3

to administer the previously undisclosed Vioxx settlement funds.

Johnson responds with three counter-arguments. First, reopening and converting the Case is not appropriate because Johnson is not a bad faith debtor. Second, the four-year gap between when the Case was closed and when the motion to reopen was filed weighs against reopening and converting the Case. Third, Johnson's creditors are not harmed by keeping the Case closed because they chose not to pursue him in state court for the last four years.

### III. LEGAL ANALYSIS

#### A. Reopening the Case.

Causes of action that the debtor could have brought on the petition date are property of the bankruptcy estate. *See Celotex Corp. v Edwards*, 514 U.S. 300, 308 n.5 (1995); *In re Moore*, 608 F.3d 253, 257-58 (5th Cir. 2010) ("The term 'all legal and equitable interests of the debtor in property' is all-encompassing and includes rights of action as bestowed by either federal or state law."). The Fifth Circuit has held that "debtors are under a continuing duty to disclose all pending and potential claims." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384-85. If a former debtor fails to disclose a claim, the Bankruptcy Code allows a party in interest—including the U.S. Trustee[2]—to ask the bankruptcy court to reopen the case. 11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010. Where there is an undisclosed asset of the estate that was not administered or abandoned by the trustee, the claim remains property of the estate and may be administered when the case is reopened. *In re Texas Wyoming Drilling, Inc.*, 422 B.R. 612, 633 n.25 (Bankr. N.D. Tex. 2010).

---

[2] *In re Winburn,* 196 B.R. 894, 900 (Bankr. N.D. Fla. 1996) ("A U.S. Trustee is clearly a 'party in interest' within the meaning of Rule 5010 and 11 U.S.C. § 350(b)").

**Memorandum Opinion and Order**  4

For example, in *In re Lott*, a woman filed for bankruptcy under chapter 7. 332 B.R. 292 (Bankr. E.D. Mich. 2005). Shortly after the case was filed, the trustee issued a report of no distribution and the case was closed. Nine months later, someone informed the trustee that the debtor was about to receive approximately $50,000, as her share of the damages award in a wrongful death case involving her late-mother's estate. Although the debtor's mother died before the debtor filed for bankruptcy, the mother's estate had not initiated the suit until the bankruptcy case was well underway, and the debtor never amended her schedules to list the lawsuit as an asset. Upon learning of the damages award, the trustee filed a motion to reopen the case, which the debtor contested. The debtor offered two reasons why the money should not be considered property of the bankruptcy estate. First, she claimed not to have had a pre-petition right to the proceeds under the Michigan wrongful death statute. Second, she argued that she was unaware of the claim until well after she filed for bankruptcy.

The court rejected both arguments, finding that the Michigan statute expressly included the deceased's children among the people entitled to recover in a wrongful death action. It did not matter that the deceased's estate brought the action and not the debtor individually. Nor did it matter "[e]xactly when the [d]ebtor found out about the case." *Id.* at 293 n.1. That detail, the court held, "is irrelevant to determining when the interest [in the proceeds] arose." *Id*. The interest arose "on the pre-petition date of death," along with the debtor's interest in the wrongful death cause of action that resulted in the proceeds. *Id*. The court affirmed its earlier decision to reopen the case and ordered the proceeds distributed to the debtor's creditors.

Here, the Contract of Representation between Johnson and his lawyer in the Vioxx litigation covers "any and all actions, claims or trial proceedings related to" personal injury and

**Memorandum Opinion and Order**  5

wrongful death claims stemming from his father's death. In Texas, as in Michigan, these claims arise at the time the alleged harm occurred. *See Velasco v. Texas Kentworth Co.*, 144 S.W.3d 632, 635 (Tex. App. 2004) (wrongful death claim arose when appellant's wife died in car accident); *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977) (" a cause of action generally can be said to accrue at the time when facts come into existence which authorize a claimant to seek a judicial remedy. [For] personal injury actions this means when the wrongful act effects an injury, regardless of when the claimant learned of such injury." (citation omitted)). Because Johnson's father died in 2002—three years before Johnson filed for bankruptcy—the claims, and all rights to proceeds resulting from them, became property of Johnson's bankruptcy estate the instant he filed his chapter 13 petition.

Like the debtor in *In re Lott*, Johnson argues that when he filed for bankruptcy he was unaware of the Vioxx claim, and that he did not become aware of it until plaintiffs' lawyers contacted his mother some eight months into the Case. The Fifth Circuit has heard this argument before and rejected it. In *In re Coastal Plains*, the court held that a debtor's lack of actual knowledge of a cause of action during the bankruptcy did not affect whether a case should later be reopened for failure to list it on the schedules. 179 F.3d 197 (5th Cir. 1999). Under that holding, Johnson "need not [have] know[n] all the facts or even the legal basis for the cause of action; rather, if [he] ha[d] enough information … to suggest that it may be a possible cause of action, then it is a 'known' cause of action [and] must be disclosed." *Id.* at 208. This includes "any claim with potential … even if it is contingent, dependant, or conditional." *Id.*

Because Johnson was aware of his father's death in 2002, he is charged with knowledge of the Vioxx claim at that time. He certainly had knowledge of the claim in March 2006 when

he hired his Vioxx lawyer while still in bankruptcy. By not amending his schedule of assets to include the Vioxx claim, Johnson deprived the trustee of the chance to administer the asset. "Reopening a case to administer assets is a statutorily explicit reason to reopen a case," *In re Miller*, 347 B.R. 48, 56 (Bankr. S.D. Tex. 2006), which is why the Court believes its prior decision to reopen the Case was correct.

The Court also disagrees with Johnson that the four-year gap between when the Case was closed and the U.S. Trustee's motion to reopen "militates against" reopening. In general, a bankruptcy court's power to reopen a case is not circumscribed by any time limit. *In re Dodge*, 138 B.R. 602, 605 (Bankr. E.D. Cal. 1992). Yet, courts have held that "the longer the time between the closing of the case and the motion to reopen, … the more compelling the reason for reopening the estate should be." *Matter of Case*, 937 F.2d 1014, 1018 (5th Cir. 1991). Thus, in *In re Hacker*, the Fifth Circuit would not reopen a case where "the chance of any substantial recovery for creditors [was] too remote to make the effort worth the risk." 411 F.2d 568, 569 (5th Cir. 1969). Here, however, the Vioxx settlement funds are substantial—quite possibly enough to pay Johnson's creditors in full. From the Court's perspective, there is no more compelling reason to reopen a bankruptcy case than to insure that the debtor's creditors are paid.

Laches is recognized as a defense to reopening a bankruptcy case under certain circumstances. *See e.g., White v. Boston* (*In re White*), 104 B.R. 951 (S.D. Ind. 1989); *In re Kean*, 207 B.R. 118 (Bankr. D. S.D. 1996). But none of the elements of laches have been proven here.[3] Rather, the U.S. Trustee promptly moved to reopen the Case when it first learned of the

---

[3] Laches may bar reopening a bankruptcy case where "(1) the moving party knew of the asset before the case was closed, (2) the moving party waited a substantial period of time after the case was closed to move to reopen, and (3) the moving party has no valid justification for the original omission." *In re Winburn,* 196 B.R. at 897.

**Memorandum Opinion and Order** 7

settlement funds. While the Court has no idea why Johnson's creditor's chose not to pursue him upon the dismissal of the Case, one possible explanation is that based upon the assets disclosed in his bankruptcy schedules, they concluded that he had no ability to respond to any judgment they might ultimately receive against him. Under the circumstances present here, the Court is unwilling to conclude that Johnson's creditors slept on their rights, as Johnson suggests in his answer.

Finally, Johnson insists that his Vioxx claim was omitted from his schedules inadvertently, and that as a good faith debtor he should not be punished by having the Case reopened after four years. The Court need not decide Johnson's good faith. Nor is the Court "punishing" Johnson by reopening the Case. Section 350(b) of the Bankruptcy Code expressly provides for the reopening of a bankruptcy case to administer assets. That is all that is happening here.

For all of these reasons, the Court rejects Johnson's arguments, concluding that the Case was properly reopened.

### B. Converting the Case.

Section 1307(c) of the Bankruptcy Code provides that "on the request of … the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title…for cause." The statute then goes on to list eleven non-exclusive examples of "cause."

Here, the U.S. Trustee points to § 1307(c)(6) – *i.e.*, Johnson's failure to make timely plan payments – and § 1307(c)(10) – *i.e.*, Johnson's failure to file an accurate schedule of assets – as

**Memorandum Opinion and Order** 8

"cause" for the conversion of the Case to chapter 7. The Court agrees with the U.S. Trustee. Moreover, in the two months since the Case was reopened, Johnson has shown no sign that he intends to prosecute the Case. He admitted as much in his testimony to the Court. Johnson also testified that (i) he does not believe his creditors are entitled to receive any of the Vioxx settlement money, and (ii) he does not intend to distribute any to them unless ordered to do so. In light of Johnson's testimony, and given that § 1307(c) authorizes the Court to convert a case if doing so "is in the best interests of creditors and the estate," the Court's decision to convert the Case is an easy one.

One final argument must be addressed. Johnson argues strenuously that the Court should not force a conversion of the Case to chapter 7 because he has not acted in bad faith. According to Johnson, "[t]he conclusion that forced conversion is for cases of bad faith is supported by the Fifth Circuit Court of Appeals in [*In re*] *Jacobsen*[,609 F.3d 647 (5th Cir. 2010)]." (Johnson Ans. ¶ 15). The Court disagrees because Johnson misapplies the *Jacobsen* holding here.

The debtor in *In re Jacobsen* petitioned for chapter 13 relief to escape a mob of angry creditors who claimed he had defrauded them. The debtor's schedules were replete with errors, undisclosed fraudulent transfers, and misrepresentations, which the chapter 13 trustee spent considerable effort uncovering. When the chapter 13 trustee moved to convert the case to chapter 7 under § 1307(c), the debtor moved to dismiss the case under § 1307(b) in a blatant attempt to postpone his day of reckoning. Despite language in § 1307(b) that appears to give the debtor an absolute right to dismiss his chapter 13 case, the bankruptcy court denied dismissal and converted the case. The Fifth Circuit affirmed the decision and, applying the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), held "that ***the right to dismiss***

**Memorandum Opinion and Order** 9

under 11 U.S.C. § 1307(b) is subject to a limited exception for bad-faith conduct or abuse of the bankruptcy process." *In re Jacobsen,* 609 F.3d at 649 (emphasis added).

Here, however, Johnson has not filed a motion to dismiss the Case under § 1307(b). So, the *Jacobsen* and *Marrama* holdings are simply irrelevant. What is relevant is whether the U.S. Trustee has established cause for the conversion of the Case to chapter 7. Having concluded that cause for conversion exists here, the Motion is granted and the Case is converted to chapter 7. The U.S. Trustee is directed to appoint a chapter 7 trustee.

**SO ORDERED.**